UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DOROTHY MOLEFI, et al.,

                        Plaintiffs,          **OPINION AND ORDER**

      v.

                                               03 CV 5631 (FB) (VVP)

THE OPPENHEIMER TRUST, et al.,

                        Defendants.
----------------------------------------------------------------x
POHORELSKY, Magistrate Judge:

Judge Block has referred this matter to me, *see* 28 U.S.C § 636(b)(1)(A), to determine whether sanctions, in the form of attorneys' fees and costs, pursuant to Rule 45 of the Federal Rules of Civil Procedure, should be imposed upon Edward Fagan, plaintiffs' counsel, for improperly issuing a subpoena to Dumisa Ntsebeza, a non-party to this action. The subpoena was quashed by an earlier ruling of this court.[1]

For the reasons stated below, the court awards the movant, Mr. Ntsebeza, $14,369.25 in attorneys' fees and $404.50 in related costs and expenses as sanctions to be paid by counsel for the plaintiffs, Edward Fagan, Esq.

---

[1] After ruling on the motion to quash and by order of the Multidistrict Litigation Panel (*see* docket entry no. 18), this matter was consolidated with a multidistrict case in the Southern District before Judge Sprizzo, *In re South African Apartheid Litigation*, No. 02-MD-1499 (S.D.N.Y.) [hereinafter "the MDL matter"]. Judge Sprizzo, however, transferred the matter back to this court for the sole purpose of addressing the sanctions issue which had already been briefed. The case as a whole, however, remains in the Southern District having been consolidated with the MDL matter; the only practical consequence is that any appeal from this Opinion and Order must be made to Judge Sprizzo. (*See* docket entry no. 24.)

**BACKGROUND**

The circumstances surrounding the service and issuance of the subpoena are relevant to the court's decision and will be recounted briefly here.[2]

This dispute is loosely related to the well-publicized litigation involving the now abolished South African apartheid regime. Prior to the inception of this matter, Mr. Fagan had represented a different set of plaintiffs in a multidistrict consolidated case before Judge Sprizzo in the Southern District of New York. That case, *In re South African Apartheid Litigation*, involved allegations that various multinational corporations violated international law, the Alien Tort Claims Act, and other federal statutes, by having conducted business with the South African government before the country was liberated and thus, indirectly or directly, aided the criminal apartheid regime.[3]

A week before oral argument on a motion to dismiss in the MDL matter was to take place, Mr. Ntsebeza, who was a member of the legal team prosecuting the multidistrict action (as was Mr. Fagan), stripped Mr. Fagan of his authority to argue the case on behalf of the plaintiffs. Ms. Diane Sammons, who is pressing the present application on behalf of Mr. Ntsebeza here, took over Mr. Fagan's role in the litigation. Oral argument eventually proceeded in the Southern District as scheduled with Mr. Ntsebeza in attendance, having traveled there from his residence in South Africa.

---

[2] These facts are adduced primarily from submissions filed by the parties in connection with the motion to quash and the motion for sanctions as well as from representations made to this court during a hearing on the motion to quash.

[3] Judge Sprizzo ultimately granted a motion to dismiss the MDL matter, *see* 346 F. Supp. 2d 538 (S.D.N.Y. 2004), a ruling which has been appealed and is currently pending before the Second Circuit.

In a surprising turn of events, Mr. Fagan, at the conclusion of the proceeding and apparently in "full view of the international and national media," personally handed Mr. Ntsebeza a subpoena (the one eventually quashed by this court). (Certification of Diane Sammons ¶ 8, attached to Mot. to Quash.) This subpoena, as it was later discovered, was issued in connection with an action that Mr. Fagan had hastily instituted in this district, i.e., the present matter, on the same day he served Mr. Ntsebeza the subpoena. (*See Molefi* Compl., Nov. 6, 2003, *available at* docket entry no. 1.) Mr. Fagan, however, never served any defendant in this action with copies of the subpoena or even the complaint for that matter, and still has not done so to date. Indeed, aside from litigation involving the subpoena, Mr. Fagan has done nothing to advance the case while it was pending in this district or after it was transferred to the Southern District and consolidated with the MDL matter. Counsel for Mr. Ntsebeza subsequently filed a motion to quash, arguing that the subpoena was issued for "retaliatory" purposes and pointing to various deficiencies infecting the subpoena.

This court, after reviewing papers and entertaining argument, agreed with Mr. Ntsebeza, finding, among other things, that the subpoena contained various procedural defects, and granted the motion to quash. In issuing its ruling, this court also suggested that, because of the near frivolous nature of the subpoena, sanctions may be warranted pursuant to Rule 45 of the Federal Rules of Civil Procedure. The court declined to make a definitive ruling on that issue, however, so it could receive the guidance of further briefing by the parties, including any opposition Mr. Fagan, who made no appearance at the hearing, may have wished to file. The matter has now been fully briefed, and the court has again received no response from Mr. Fagan.

# DISCUSSION

## I. Motion for Sanctions Under Rule 45

The court first addresses the threshold issue of whether sanctions, in the form of attorneys' fees, are warranted.[4] Rule 45(c)(1) imposes a duty upon a party issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1). To ensure compliance with this requirement, the court is authorized to "impose upon the party or attorney in breach of [the] duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee." *Id.*

There is scant authority in this circuit as to when and under what circumstances sanctions under Rule 45(c)(1) should be imposed. According to the 1991 Advisory Committee Notes, however, the rule's sanctions provision was intended primarily to protect "a *non-party* witness as a result of a misuse of the subpoena." Fed. R. Civ. P. 45(c)(1) advisory committee's note (1991) (emphasis added); *see also Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003) (Gorenstein, Mag. J.) ("Fed. R. Civ. P. 45(c) provides additional protection for non-parties subject to a subpoena by mandating that a court 'quash or modify the subpoena if it . . . subjects [the] person to undue burden.' ") (quoting Fed. R. Civ. P. 45(c)(3)(A)(iv)). There is little doubt then that Rule 45(c)(1) was intended to apply to the service of unduly burdensome subpoenas on non-parties like Mr. Ntsebeza here.

The answer as to whether sanctions should ultimately be imposed against Mr. Fagan, the court finds, is closely tied to its findings on the motion to quash and the extent to which those

---

[4]While counsel refers to the present motion as one for attorneys' fees, it is more properly characterized as one seeking sanctions of which fees are a component. *See* Fed. R. Civ. P. 45(c)(1).

findings represent a failure by Mr. Fagan to carry out his Rule 45-mandated duty to "take reasonable steps to avoid imposing an undue burden" on Mr. Ntsebeza. Fed. R. Civ. P. 45(c)(1). This is a two-party inquiry. The court must determine whether the subpoena imposed an undue burden on Mr. Ntsebeza, and, if so, what, if any "reasonable steps" Mr. Fagan took to avoid imposing such a burden. *See Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2002 WL 1008455, at *4 (N.D. Ill. May 13, 2002) (employing a two-step Rule 45(c)(1) sanctions inquiry, first looking at whether an undue burden was imposed, then examining if reasonable steps were taken to avoid such a burden).

The court need not dwell on the "undue burden" factor, especially considering its earlier ruling quashing the subpoena at issue. To be sure, the court expressly eschewed reliance on undue burden as a basis for quashing the subpoena. At that time, however, the court was concerned that it lacked an adequate factual record from which it could have ruled on the undue burden argument. (Hr'g on Mot. to Quash Tr. 19:19-21 ("[THE COURT:] I am not going to go so far as to say that the subpoena has to be quashed on grounds of undue burden. I'm not convinced that at least in the absence of some further factual record, that this does impose an undue burden.").) Because Mr. Fagan has since taken no action in prosecuting this matter – and indeed seems to have abandoned it altogether[5] – the court is now convinced that undue burden exists by the mere fact that Mr. Ntsebeza, a non-party, had to, and did, expend time and money contesting a patently frivolous and procedurally flawed subpoena – findings this court did make

---

[5]Mr. Fagan's last communication with the court came in the form of a last-minute request (handwritten fax on hotel letterhead) to adjourn the motion to quash hearing, which this court denied. (*See* Hr'g on Mot. to Quash 9:9-12.)

in granting the motion to quash.⁶ As a court in the Seventh Circuit observed, "When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45(c)(1)." *Builders Ass'n of Greater Chicago*, 2002 WL 1008455, at *4.⁷ There can be little dispute then that the subpoena here imposed an undue burden on Mr. Ntsebeza.

The second prong of the Rule 45(c)(1) sanctions test requires a determination of what, if any, "reasonable steps" Mr. Fagan took to avoid imposing what the court has found to be an undue burden on Mr. Ntsebeza. The court does not have the guidance of a response, written or oral, by Mr. Fagan. The record before the court, and in particular the facts pertaining to Mr. Fagan's relationship with Mr. Ntsebeza and the case's procedural history, convince the court that far from taking any "reasonable steps" to avoid imposing an undue burden on Mr. Ntsebeza, the whole point of the subpoena was to impose such a burden on him.

The relationship between Mr. Ntsebeza and Mr. Fagan was troubled to say the least. Not long before he was served the subpoena, Mr. Ntsebeza terminated Mr. Fagan's high-profile role

---

⁶(*See, e.g.*, Hr'g on Mot. to Quash Tr. 20:13-17 ("But in light of the deficiency, the clear procedural deficiency – let me add, the subpoena has other defects, not the least of which is that it calls for a deposition and a production of documents in a foreign country."), 21:12-15 ("So, there are procedural defects that in this court's view, any attorney should be aware of these grave procedural defects, even before the subpoena is served.").)

⁷This proposition, the court notes, was formulated in response to the argument that no undue burden was imposed for purposes of Rule 45 sanctions because the subpoena at issue there had been quashed before any responsive documents had to be produced, a situation mirroring the one here. *Id.* It is also worth noting that in reaching its conclusion, the *Builders* court did not go so far as to suggest that "every time a court quashes a subpoena the subpoenaed non-party is entitled to attorneys' fees." *Id.* Nevertheless, an opposite result, that court found, would have "eviscerate[d] the protection provided by Rule 45(c)(1)." *Id.*

in the MDL matter then pending before Judge Sprizzo, an unfortunate falling-out that eventually found its way to the press. (*See* Christelle Terreblanche, *American Apartheid Suit Lawyer Gets the Boot*, Pretoria News, Nov. 5, 2003, attached to Mot. to Quash Ex. A ("On the eve of a crucial decision by a New York judge on whether to allow apartheid litigation against big business to go ahead, apartheid victims have dumped their controversial American lawyer Ed Fagan.").) In response to media inquiry of the firing, Mr. Ntsebeza then issued a curt statement, saying that "As far as I am concerned Fagan is out of the apartheid case." (*Id.*) Certainly, one can reasonably conclude that the subpoena was Mr. Fagan's way of "getting back" at Mr. Ntsebeza.

This theory of retaliation is buttressed by the case's history and circumstances surrounding the issuance of the subpoena. Mr. Fagan instituted the matter on the same day he issued a subpoena to Mr. Ntsebeza, and served the subpoena personally upon Mr. Ntsebeza before he even served copies of the complaint upon the defendants.[8] If this was an attempt in seeking pre-answer discovery, Mr. Fagan, an experienced litigator, should have known of the futility of such an effort since Rule 26(d), subject to certain exceptions not applicable here, expressly bars discovery "from any source before the parties have conferred as required by Rule 26(f)" – an event which obviously did not take place here. *See* Fed. R. Civ. P. 26(d). If Mr. Fagan attempted anything else, one need look no further than the subpoena itself to find out what his actual motives were in issuing it.

Simply put, the subpoena bears the markings of a hastily arranged affair. It calls for the testimony of Mr. Ntsebeza in both the United States and South Africa. Mr. Fagan, however, failed to indicate on the subpoena where in the United States Mr. Ntsebeza was to appear for the

---

[8]Indeed, no answer has yet been filed in this case to date.

taking of testimony. Nor did Mr. Fagan provide any authority as to how, if at all, the court could enforce compliance with the subpoena in South Africa. Furthermore, when confronted with the flaws of the subpoena – communications which this court assumes took place since Mr. Fagan did submit papers in response to the motion to quash – Mr. Fagan took no steps to alter it, and instead continued to press for Mr. Ntsebeza's compliance while continually seeking last-minute adjournments. Significantly, these adjournments also constrained the court's ability to rule upon the merits of the subpoena, thus burdening Mr. Ntsebeza further. *Cf. Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03 Civ. 1382, 2003 WL 23018833, at *9 (S.D.N.Y. Dec. 23, 2003) (Sweet, J.) ("Sanctions are properly imposed and attorneys' fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash.") (citing *Am. Int'l Life Assur. Co. of New York v. Vazquez*, No. 02 Civ. 141, 2003 WL 548736, at *2 (S.D.N.Y. Feb. 25, 2003) (Rule 45 sanctions imposed when an attorney conveyed to the subpoenaing party that the testimony sought was covered by privilege which the client refused to waive but the subpoena was still issued)); *Builders Ass'n of Chicago*, 2002 WL 1008455, at *4-5 (finding Rule 45 sanctions proper, in part, because there was "no indication that the [offending party] attempted to tailor its subpoenas . . . .").

In sum, the circumstances here – with what is the shell of a case created by Mr. Fagan and his checkered history with Mr. Ntsebeza – clearly indicate a failure by Mr. Fagan to ensure, through reasonable steps, that Mr. Ntsebeza would not be unduly burdened by the subpoena. Indeed, the court concludes the opposite – that Mr. Fagan issued the subpoena to Mr. Ntsebeza for the sole purpose of imposing upon him an undue burden. Accordingly, the court finds sanctions pursuant to Rule 45(c)(1) appropriate here.

## II. Attorneys' Fees and Costs

### A. Attorneys' Fees Assessed Under Lodestar Method

The court is aware that this is not the traditional attorneys' fees application where reimbursement is sought by a prevailing party. Rather, what we have here is a request for fees as a part of sanctions motion. As Judge Sweet noted, "[c]ourts imposing a sanction of attorneys' fees under Rule 45(c)(1) have often granted sanctions *equaling most if not all of the attorneys' fees sought.*" *Night Hawk*, 2004 WL 1375558, at *3 (surveying cases) (emphasis added). Nevertheless, the rule itself makes clear that attorneys' fees awarded as part of a Rule 45(c)(1) sanction must be "reasonable." *See* Fed. R. Civ. P. 45(c)(1) ("The court . . . shall enforce [the Rule 45] duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include . . . a *reasonable* attorneys' fee.") (emphasis added); *accord Night Hawk*, 2004 WL 1375558, at *4 (employing reasonableness standard in assessing Rule 45 attorneys' fees). The court must therefore test the fee request here to ensure that it meets the reasonableness standard.

The Second Circuit has adopted the "lodestar" approach in determining what constitutes a reasonable attorneys' fee. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998). "The so-called 'lodestar' figure . . . is arrived at by multiplying 'the number of hours reasonably expended on the litigation . . . [with] a reasonable hourly rate." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This assessment "should be based on 'prevailing market rates,' for comparable attorneys of comparable skill and standing in the pertinent legal community," *id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), which, here, is the Eastern District of New York, *Pinner v. Budget Mortgage Bankers, Ltd.*, 336 F. Supp. 2d 217, 220

(E.D.N.Y. 2004). This, in turn, requires the submission of information "concerning the credentials or experience of counsel applying for fees." *Night Hawk*, 2004 WL 1375558, at *4 (citations omitted). The absence of such data may warrant a reduction in fees. *Id.*

A fee application must also be accompanied by contemporaneous time records which "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch*, 148 F.3d at 173 (citations omitted). "If such records are inadequate the Court may reduce the award accordingly." *Vernon v. Port Authority of New York and New Jersey*, 220 F. Supp. 2d 223, 229 (S.D.N.Y. 2002) (Leisure, J.) (citation omitted).

In determining the reasonable hours expended, the court excludes those "[h]ours that are 'excessive, redundant, or otherwise unnecessary.'" *Kirsch*, 148 F.3d at 173 (quoting *Hensley*, 461 U.S. at 434). "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Id.* (quoting *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

Finally, it should be emphasized that "there is a 'strong presumption' that the lodestar figure represents a reasonable fee." *Morris v. Eversley*, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

### B. Lodestar Calculation

Counsel requests $16,905.00 in attorneys fees and $404.50 in related costs for time spent litigating the motion to quash. The figures represent 69.20 hours of legal work performed by four attorneys from two different law firms, Nagel & Rice and Weiner & Katz. After reviewing counsel's submissions, the court finds a deduction warranted for several reasons.

1.      **Reasonableness of Hourly Rate**

Assessing the reasonableness of each attorney's hourly rate is difficult, if not impossible, for the court because of the dearth of information provided. To be sure, the billing records are sufficient insofar as task-specific information is concerned.[9] Furthermore, the rates indicated in the submission, which range from $150.00 to $375.00, have been found by courts in this circuit to be reasonable.[10] Counsel, however, has failed to provide this court with information of equal importance; namely, the background and experience of counsel for whom fees are sought. Nor has counsel given this court any guidance as to what rates attorneys of similar caliber charge in the current marketplace. There is therefore no way the court can engage in any sort of comparative analysis as mandated under the "lodestar" method. Accordingly, a deduction is warranted. *See Night Hawk*, 2004 WL 1375558, at *4 ("[W]here no information is provided concerning the credentials or experience of counsel applying for fees, it is appropriate to reduce the amount of a fee award sought.") (citations omitted); *Access 4 All, Inc. v. Park Lane Hotel, Inc.*, No. 04 Civ. 7174, 2005 WL 3338555, at *4 (S.D.N.Y. Dec. 7, 2005) ("Because her [the

---

[9]For each billing entry, information is provided as to the date of the entry, the type of work performed, the initials of the attorney performing the task, the time spent in hours, the rate charged by the attorney, and the total amount billed.

[10] *See, e.g.*, *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 205-08 (E.D.N.Y. 2006) ($350 hourly rate for partners in employment discrimination case); *Levy v. Powell*, No. CV-00-4499, 2005 WL 1719972, at *9 (E.D.N.Y. July 22, 2005) (surveying cases and concluding that "In 2003 and 2004, district courts in the Eastern District found rates of between $225.00 and $300.00 for partners to be reasonable.") (citations omitted); *Aiello v. Town of Brookhaven*, No. 94-CV-2622, 2005 WL 1397202, at *4 (E.D.N.Y. June 13, 2005) (finding, in an environmental law case, reasonable rates of $200 to $300 for partners, $200 to $250 for senior associates, and $100 to $150 for junior associates).

attorney for whom fees are being sought] qualifications have not been disclosed, her billing rate cannot be evaluated at all, and I therefore reject the application of fees related to her work."); *cf. General Motors Corp. v. Villa Marin Chevrolet, Inc.*, 240 F. Supp. 2d 182, 188 (E.D.N.Y. 2002) (Gleeson, J., Pohorelsky, Mag. J.) (deducting fees sought for paralegals because no information was submitted regarding their experience or expertise).

### 2. Reasonableness of Hours Billed

As noted above, counsel seeks fees for 69.20 hours spent in litigating the motion to quash. This figure is excessive and supports an additional reduction in the fee award sought.

As an initial matter, the court points out that counsel could have, and indeed should have, challenged the subpoena through less time intensive and costly avenues than the path of motion practice ultimately embarked upon. As Local Civil Rule 37.3(c) makes clear, discovery disputes that cannot be resolved among the affected parties, which surely encompasses objections to a Rule 45 subpoena, "shall" be brought to the court's attention "by telephone conference with all affected parties on the line or by letter not exceeding three pages in length outlining the nature of the dispute and attaching relevant materials." E.D.N.Y. Civ. R. 37.3(c). In filing the motion to quash at the outset, counsel failed to follow the rules requirements, which, it is important to note, were implemented to prevent such a situation from occurring – that is, the propagation of needless motion practice. While counsel should not be penalized for taking steps to protect her client's interests, this oversight nevertheless prompts this court to subject the present fee request to greater scrutiny if for no other reason than that much of the time billed could have been avoided if counsel followed the requirements of Rule 37.3(c).

In that regard, the court first notes that counsel's billing practice of aggregating multiple tasks into one billing entry, or "block billing," while not prohibited, makes it exceedingly difficult for this court to conduct its lodestar analysis. As a court in this district recently explained, "because block billing 'renders it difficult to determine whether, and/or the extent to which, the work done by . . . attorneys is duplicative or unnecessary,' courts apply percentage cuts where there is a substantial amount of block billing in a fee request." *Aiello*, 2005 WL 1397202, at *3 (citations omitted). The prevailing and preferred practice is to bill each task separately. That way, the court can scrutinize the reasonableness of the time billed with greater accuracy and counsel is not tempted to inflate the actual time spent by clumping multiple tasks together hoping to camouflage the true length of each one.

The billing records here evidence a "substantial amount" of block billing thus warranting a reduction. Ms. Sammons performed the bulk of work in this matter and, as the billing entries indicate, was also the one primarily responsible for block billing. While the time billed for some of Ms. Sammons' so-called block entries seems reasonable in light of the underlying tasks, the court is constrained in its ability to make that determination for other block entries due to vague and overly general descriptions. For example, in an entry from December 22, 2003, counsel bills three hours for the following: "Review Fagan's submission, preparation for conference with the court, conference call with the court, preparation of email to team regarding conference call, phone call with Dumisa regarding results of conference call." (Ex. B attached to Mot. for Sanctions.) It is a near impossibility for the court to assess the reasonableness of this entry (and ones like it) when the time billed is to be divided among numerous, distinct tasks. *Cf. Ass'n of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstalt*

*AG*, No. 04 Civ. 3600, 2005 WL 3099592, at *5 n.9 (S.D.N.Y. Nov. 17, 2005) ("As this "block billing entry" covers time expended on two, or perhaps three, discrete tasks, the Court is at pains to allocate the time expended on each task and make a judgment as to reasonableness."). A reduction in the final fee award is therefore warranted.

Even those entries that are not the product of block billing, however, strain the bounds of reasonableness. There are individual entries that, based on the descriptions provided, lead to excessive charges. For instance, counsel bills one hour for "[t]racking down Ed to confirm conference call with Court." (Ex. B attached to Mot. for Sanctions.) Even if the court could somehow identify for itself what it means to "track down" an attorney, surely, such an activity could not have consumed one hour of counsel's time. Nor can the total number of hours billed, on the whole, withstand the test of reasonableness. The subpoena contained glaring procedural and substantive deficiencies that could have been readily and effectively challenged without resorting to novel legal theories or extensive legal research. Counsel, in his arguments during the hearing, acknowledged as much. Indeed, the entire motion to quash was six pages excluding exhibits.[11] Even if the court was to give counsel the benefit of the doubt and credit the hours spent for oral argument before this court (10.5 hours) as reasonable, that still leaves a total of 58.7 hours (69.20 hours less 10.5 hours), or a little more than seven work days, to contend with. In light of the subpoena's gross deficiency and the motion's relative simplicity, that total cannot be squared with the court's notion of reasonableness. An additional reduction is therefore warranted.

---

[11]Counsel also filed a five-page reply to Mr. Fagan's opposition which only contained a largely irrelevant affidavit submitted by a plaintiff in the matter.

For the reasons stated above, the court considers an overall fifteen percent (15%) reduction of the fees to be warranted.[12]

### 3. Reasonableness of Costs

An attorneys' fee award also includes "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *United States Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989) (citation omitted). Recovery is not permitted, however, of expenditures associated with "routine office overhead." *Pinner*, 336 F. Supp. 2d at 222.

Counsel seeks reimbursement of costs associated with mailings, photocopies, and court fees. These are precisely the type of costs that may be included in an award of attorneys' fees. *See, e.g.*, *Levy*, 2005 WL 1719972, at *12 (allowing recovery of costs for "photocopies, deposition transcripts, expert witness fees, travel, filing fees, messenger services, mailings, and facsimiles."); *Lawson ex rel. Torres v. City of New York*, No. 99-Civ-10393, 2000 WL 1617014, at *5 (S.D.N.Y. Oct. 27, 2000) (reimbursing as part of attorneys' fees award costs for photocopying and transcripts). The costs claimed by counsel are therefore reimbursable.

---

[12]The court is aware that counsel has not requested compensation for time spent preparing this application despite her right to do so. *See, e.g.*, *Creative Resources Group of New Jersey v. Creative Resources Group, Inc.*, 212 F.R.D. 94, 102-03 (E.D.N.Y. 2002) (Wall, Mag. J.) (including in fee award time billed for making sanctions motion); *Hiller v. County of Suffolk*, 199 F.R.D. 101, 108 (E.D.N.Y. 2001) (Pohorelsky, Mag. J.) ("Time spent preparing the fee application itself is properly included in the lodestar calculation.") (citing *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996)). The choice of a fifteen percent across-the-board deduction takes that fact into consideration.

## CONCLUSION

For the foregoing reasons, the movant is awarded sanctions in the amount of $14,369.25 in attorneys' fees and the full $404.50 in related costs and expenses, said sanctions to be paid by counsel for the plaintiffs, Edward Fagan, Esq.

**SO ORDERED:**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
February 15, 2007